IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CT-3234-FL

| | |
|---|---|
| STEVE M. TOLBERT, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ORDER ) |
| SAMI HASSAN and DR. ROBERT UHREN, | ) ) ) ) |
| Defendants.[1] | ) |

This matter is before the court on defendants' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 121, 128). Also before the court is defendant Dr. Robert Uhren's ("Uhren") motion to seal (DE 133) the medical records attached to his affidavit, and plaintiff's consent motion to stay case management order (DE 137). Plaintiff did not respond to defendants' motions, and in this posture, the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing a complaint on August 7, 2019, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff alleges defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution.

Following a period of discovery and several extensions of time, defendant Sammi Hassan

---

[1] Formerly-named defendants NCDPS Medical Staff and Dr. Stewart were dismissed on January 22, 2020. Formerly-named defendant Arnett Coleman was dismissed on August 14, 2020. Formerly-named defendants Keith D'Amico, Philip Stover, Abhay Agarwal, and Leonard Polanco were dismissed on March 10, 2022. Formerly-named defendant Peter Woglom was dismissed on March 23, 2022.

("Hassan") filed his instant motion for summary judgment on February 10, 2022. In support of the motion, defendant relies upon a memorandum of law, statement of material facts, and appendix of exhibits thereto comprising plaintiff's complaint, plaintiff's amended complaint, and defendant Hassan's declaration. That same day, the court provided plaintiff notice of the motion for summary judgment and instructions for responding, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

On March 14, 2022, defendant Uhren filed his instant motions for summary judgment and to seal plaintiff's medical records. In support of the motion for summary judgment, defendant relies upon a memorandum of law, statement of material facts, and appendix of exhibits thereto comprising defendant Uhren's affidavit and plaintiff's medical records. The next day, the court provided plaintiff another notice pursuant to Roseboro. Plaintiff thereafter filed the instant consent motion to stay the case management order.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff and drawn from his verified complaint and attached declaration, may be summarized as follows. In December 2012, plaintiff began experiencing pain in the joint of his big toe on his right foot. (Pl.'s Decl. (DE 1-1) at 1). When plaintiff complained to medical staff about the pain, he was given ibuprofen. (Id.). Plaintiff's pain persisted, and he regularly complained through sick calls. (Id.). Plaintiff continued to be treated with ibuprofen. (Id. at 1).

Plaintiff did not receive x-rays until a cyst appeared on the affected joint. (Id.). Plaintiff was told "it was nothing," but his pain persisted to the point he could not walk. (Id. at 1–2; Compl. (DE 1) at 2–3). Plaintiff hobbled for months with no help from medical staff. (Pl.'s Decl. (DE

2

1-1) at 2). In December 2017, plaintiff was in severe pain and declared a medical emergency. (Id.).

Plaintiff was examined by a physician's assistant and diagnosed with a dorsal bunion. (Id.; Compl. (DE 1) at 2). The physician's assistant recommended emergency surgery. (Pl.'s Decl. (DE 1-1) at 2). Plaintiff was transferred to Central Prison for corrective surgery in which a bone implant was placed in the affected toe. (Id.).

The surgery did not correct plaintiff's pain, and he continued to complain through sick calls. (Id.). Plaintiff was informed the pain would subside over time, but the pain never eased. (Id.). Plaintiff eventually discovered that the implant had been placed incorrectly, which was causing pain and hindering plaintiff's mobility. (Id.; Compl (DE 1) at 2–3). Moreover, plaintiff began having similar issues with the big toe on his left foot. (Pl.'s Decl. (DE 1-1) at 2). Plaintiff feared the surgeon contracted by the prison would not handle future surgeries correctly and requested to be seen by an outside bone specialist. (Id.).

Additional facts bearing on plaintiff's treatment by defendant Uhren will be discussed in the analysis herein.

## DISCUSSION

A.  Motion to Seal

Defendant Uhren moves to seal filings in support of his motion for summary judgment that contain plaintiff's personal medical information. (DE 133). Plaintiff does not object to sealing these records. The public has received adequate notice of the motion to seal. No less drastic alternative to sealing these documents is available because private information appears throughout the filing. Plaintiff's interest in preserving the confidentiality of his private health conditions

3

outweighs any public interest in disclosure. Thus, the court grants the motion to seal.

B.  Summary Judgment Motions

1.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)

4

("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

2. Analysis

a. Defendant Hassan

Defendant Hassan argues that plaintiff's claims against him are time barred. There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983. Instead, the analogous state statute of limitations applies. Burnett v. Grattan, 468 U.S. 42, 49 (1984). Specifically, the state statute of limitations for personal injury actions governs claims brought under 42 U.S.C. § 1983. See Wallace v. Kato, 549 U.S. 384, 387–88 (2007). North Carolina has a three-year statute of limitations for personal injury actions. N.C. Gen. Stat. § 1-52(5); see Tommy Davis Const., Inc. v. Cape Fear Pub. Util. Auth., 807 F.3d 62, 67 (4th Cir. 2015).

Although the limitations period for claims brought under § 1983 is borrowed from state

5

law, the time for accrual of an action is a question of federal law. Wallace, 549 U.S. at 388; Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996). A claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. See Wallace, 549 U.S. at 391. However, when "a harm has occurred more than once in a continuing series of acts or omissions, a plaintiff under certain circumstances may allege a 'continuing violation' for which the statute of limitations runs anew with each violation." See DePaola v. Clarke, 884 F.3d 481, 486 (4th Cir. 2018); Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1166–67 (4th Cir. 1991). In order to rely on the "continuing violations" doctrine, plaintiffs must "(1) identify a series of acts or omission that demonstrate [the constitutional violation]; and (2) place one or more of these acts or omissions within the applicable statute of limitations." DePaola, 884 F.3d at 487; see also Shomo v. City of N.Y., 579 F.3d 176, 182 (2d Cir. 2009).

Here, plaintiff commenced this action, at the earliest, on July 25, 2019, the date he signed the original complaint. (See Compl. (DE 1) at 5); Houston v. Lack, 487 U.S. 266, 270 (1988) (explaining pro se incarcerated plaintiff is entitled to "prison mailbox rule" whereby the date he delivers the filing to prison officials for mailing is the date of filing). Thus, any claims that accrued prior to July 25, 2016, are presumptively untimely under North Carolina law. See N.C. Gen. Stat. § 1-52(5); Tommy Davis Const., 807 F.3d at 67. Defendant Hassan offers undisputed evidence that he has not treated plaintiff within the statutory period. (Hassan Aff. (DE 123-3) ¶¶ 2–8). Plaintiff must come forward with "specific" evidence opposing this assertion to defeat defendant Hassan's motion for summary judgment. See Sedar v. Reston Town Ctr. Prop., LLC, 988 F.3d 756, 761 (4th Cir. 2021) ("[T]he nonmoving party, to survive the motion for summary judgment, must demonstrate specific, material facts that give rise to a genuine issue." (citing

6

Celotex, 477 U.S. at 323)). However, he presents no verified evidence that he was ever treated by defendant Hassan.² Accordingly, plaintiff fails to show specific, material facts giving rise to a genuine issue, and defendant Hassan is entitled to summary judgment.

b. Defendant Uhren

Plaintiff alleges medical staff were deliberately indifferent to his serious medical needs when he was not properly treated for his dorsal bunion.³ Although the Fourteenth Amendment's Due Process Clause generally governs a detainee's claim of deliberate indifference, see Kingsley v. Hendrickson, 576 U.S. 389, 400–01 (2015), the Fourteenth Amendment analysis essentially is indistinguishable from an Eighth Amendment analysis. See Brown v. Harris, 240 F.3d 383, 388–89 (4th Cir. 2001). The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756, 761 (1996). "In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotations omitted).

The first prong is objective – the inmate must show that "the deprivation of [a] basic human need was objectively sufficiently serious." Id. (internal quotations omitted). In the medical context, a basic human need is "one that has been diagnosed by a physician as mandating treatment

---

² As the court previously has explained to plaintiff, he cannot rely on unverified allegations in his statement of material facts or responsive briefing to create a triable issue of fact. See Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324; (See Roseboro Notices (DE 125, 134)). Accordingly, the court does not consider plaintiff's unverified allegations in resolving defendants' motions for summary judgment.

³ Plaintiff does not provide verified evidence that he was treated by defendant Uhren. However, defendant Uhren acknowledges and provides verified evidence that he treated plaintiff within the statutory period. (See Uhren Mem. (DE 129) at 6–16).

7

or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008).

The second prong is subjective – the inmate must show that "subjectively the officials acted with a sufficiently culpable state of mind." See Strickler, 989 F.2d at 1379 (internal quotations omitted). The mental state for "deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). "It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995); see Farmer, 511 U.S. at 837. A plaintiff therefore must establish the prison official's "actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Farmer, 511 U.S. at 837–39).

Deliberate indifference is thus "a particularly high bar to recovery." Iko, 535 F.3d at 241. For claims involving medical care, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged." Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985). Negligence or medical malpractice in diagnosis or treatment are not exceptional circumstances. See id.; see also Estelle v. Gamble, 429 U.S. 97, 105–08 (1976). Finally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844; Odom v. South Carolina Dep't of Corr., 349 F.3d 765, 770 (4th Cir. 2003).

Defendant Uhren does not address the objective prong of the analysis. (See Def. Uhren Mem. (DE 129) at 10–14). As set forth above, plaintiff endured severe pain, and he required surgery on his right big toe. (See Pl.'s Decl. (DE 1-1) at 1–2; Uhren's Aff. (DE 132) ¶¶ 56–57); Uhren Ex. 42 (DE 132-47) at 8). The undisputed evidence shows that plaintiff suffered from an objectively serious medical condition. See Iko, 535 F.3d at 241.

The parties instead dispute the subjective prong. As discussed above, plaintiff alleges medical staff for the North Carolina Department of Public Safety, which defendant Uhren concedes includes himself, did not appropriately treat his foot pain for five years and the corrective surgery was done incorrectly. (Pl.'s Decl. (DE 1-1) at 1–2). Plaintiff claims medical staff did not treat him for five years beyond providing ibuprofen for his pain. (Pl.'s Decl. (DE 1-1) at 2). However, such a claim is belied by defendant Uhren's affidavit and plaintiff's medical record.

Such evidence shows defendant Uhren personally examined plaintiff on at least five occasions, reviewed plaintiff's medical records on at least four occasions, and submitted at least four utilization review ("UR") requests on plaintiff's behalf. (Uhren Aff. (DE 132) ¶ 80). Defendant Uhren first examined plaintiff on August 30, 2013, and observed plaintiff's big toes were enlarged. (Id. ¶ 8; Uhren's Ex. 5 (DE 132-5) at 2–3). Defendant Uhren ordered 500 milligrams of naproxen twice daily for six months to ease plaintiff's pain. (Uhren Aff. (DE 132) ¶ 8; Uhren's Ex. 5 (DE 132-5) at 3). He also recommended for plaintiff to purchase athletic shoes from the canteen and explained to plaintiff that a previously submitted UR request for a podiatry consult had been denied. (Uhren Aff. (DE 132) ¶ 8).

Defendant Uhren again examined plaintiff on September 13, 2013, and observed plaintiff's big toes were enlarged. (Id. ¶ 10). Defendant Uhren ordered two 325 milligram tablets of

9

Tylenol three times a day for three months and entered another UR request for a podiatry consultation. (Id. ¶ 10; Uhren Ex. 6 (DE 132-6) at 9; Uhren Ex. 7 (DE 132-7) at 4–6). On August 13, 2015, defendant Uhren performed a third examination of plaintiff. (Uhren Aff. (DE 132) ¶ 26; Uhren Ex. 16 (DE 132-16) at 3, 7–8). He reviewed the results from plaintiff's June 29, 2015, x-rays and lab work, which showed mild arthritis and elevated C-reactive protein, respectively. (Uhren Aff. (DE 132) ¶ 26). He also noted plaintiff had bulges on both big toe joints, which were tender to palpation. (Id.). Defendant Uhren again entered UR requests for approval of the narcotic Ultram and for a podiatry consult, which were both approved. (Id.; Uhren Ex. 16 (DE 132-16) at 9–11). Plaintiff was scheduled for a podiatry consultation for December 18, 2015. (Uhren Aff. (DE 132) ¶ 26).

On December 10, 2015, defendant Uhren reviewed plaintiff's chart and determined plaintiff did not meet criteria for a bottom bunk assignment. (Uhren Aff. (DE 132) ¶ 32; Uhren Ex. 22 (DE 132-22) at 2). However, he renewed plaintiff's order to receive 800 milligrams of ibuprofen three times a day as needed for 180 days. (Uhren Aff. (DE 132) ¶ 32; Uhren Ex. 22 (DE 132-22) at 2). On December 18, 2015, defendant Uhren reviewed the podiatrist's treatment note recommending approval for extra depth inlay diabetic boots for plaintiff. (Uhren Aff. (DE 132) ¶ 33; Uhren Ex. 23 (DE 132-23) at 2–4). Such a recommendation was approved on January 3, 2016. (Uhren Aff. (DE 132) ¶ 33; Uhren Ex. 23 (DE 132-23) at 5).

On January 28, 2016, defendant Uhren met with plaintiff to discuss a pain management alternative to Tramadol. (Uhren Aff. (DE 132) ¶ 37; Uhren Ex. 27 (DE 132-27) at 2–3). Plaintiff decided to try a combination of ibuprofen and Tylenol. (Uhren Aff. (DE 132) ¶ 37; Uhren Ex. 27 (DE 132-27) at 2–3). Thus, defendant Uhren discontinued plaintiff's prescription for Tramadol

10

and ordered one tablet of acetaminophen extended release three times a day as needed for 180 days and 500 milligrams of naproxen twice a day for 90 days. (Uhren Aff. (DE 132) ¶ 37; Uhren Ex. 27 (DE 132-27) at 2–3).

On May 2, 2016, defendant Uhren reviewed plaintiff's chart in connection with a nurse's referral from an April 29, 2016, sick call appointment. (Uhren Aff. (DE 132) ¶ 41; Uhren Ex. 31 (DE 132-31) at 2). Based on the review, defendant Uhren ordered continuation of 500 milligrams of naproxen twice daily for 180 days. (Uhren Aff. (DE 132) ¶ 41; Uhren Ex. 31 (DE 132-31) at 2). On August 24, 2017, defendant Uhren again examined plaintiff. (Uhren Aff. (DE 132) ¶ 52; Uhren Ex. 42 (DE 132-42) at 2). He observed erythema and decreased motion in plaintiff's big toes. (Uhren Aff. (DE 132) ¶ 52; Uhren Ex. 42 (DE 132-42) at 2). Thus, he ordered plaintiff to take 800 milligrams ibuprofen three times a day as needed for 90 days. (Uhren Aff. (DE 132) ¶ 52; Uhren Ex. 42 (DE 132-42) at 2). Defendant Uhren also entered a UR request for plaintiff to have another podiatry consultation, which was approved. (Uhren Aff. (DE 132) ¶ 52; Uhren Ex. 42 (DE 132-42) at 3).

On December 15, 2017, defendant Uhren reviewed the note from the podiatry consultation in which plaintiff decided to proceed with surgery on his right big toe. (Uhren Aff. (DE 132) ¶ 56; Uhren Ex. 46 (DE 132-46) at 2–4). The surgery was scheduled for December 20, 2017. (Uhren Aff. (DE 132) ¶ 56). Plaintiff was not offered any guarantees regarding surgery outcomes. (Uhren Ex. 46 (DE 132-46) at 2).

Plaintiff does not present any verified evidence disputing defendant Uhren's portrayal of plaintiff's treatment. See Sedar, 988 F.3d at 761. Plaintiff's complaints that he only was treated with Tylenol for his severe foot pain for five years is not supported by the undisputed evidence.

Moreover, plaintiff's general assertion that more action should have been taken within those five years constitutes a disagreement with treatment methods and recommended course of treatment, which does not establish deliberate indifference. Wright, 766 F.2d at 849; see also Jackson, 775 F.3d at 178 ("Though hindsight suggests that Lightsey's treatment decisions may have been mistaken, even gravely so, we agree with the district court that Jackson's claim against Lightsey is essentially a disagreement between an inmate and a physician over the inmate's proper medical care, and we consistently have found such disagreements to fall short of showing deliberate indifference.").

The court acknowledges the serious pain plaintiff has endured for years and that he underwent corrective surgery to try to alleviate his pain. On these facts, however, defendant Uhren's failure to provide more immediate, intensive treatment for plaintiff does not create a genuine issue of material fact as to a constitutional violation for deliberate indifference to serious medical needs.

## CONCLUSION

Based on the foregoing, defendants' motions for summary judgment (DE 121, 128) are GRANTED. Defendant Uhren's motion to seal (DE 133) is GRANTED. The clerk is DIRECTED to maintain the exhibits attached to docket entry 132 under seal. Plaintiff's consent motion to stay case management order (DE 137) is DENIED as moot. The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of September, 2022.

_____
LOUISE W. FLANAGAN
United States District Judge